UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**   'O'   JS-6

| Case No. | 2:16-CV-01046-CAS (Ex) | Date | November 7, 2016 |
|---|---|---|---|
| Title | OAT SOLUTIONS, LLC V. MATTI RIHKO ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Peter Haviland | Terree Bowers | |
| Terrence Jones | Mary Andrues | |
|  | Joshua Fowkes | |

**Proceedings:** DEFENDANTS' MOTION TO DISMISS (Filed August 8, 2016, Dkt. 22)

## I. INTRODUCTION

On February 16, 2016, Oat Solutions, LLC ("Oat Solutions"), filed this case against Matti Rihko, Vincent Poujardieu, and Raisio PLC ("Raisio") alleging (1) common law fraud by intentional misrepresentation, and (2) common law fraud by concealment. Dkt. 1.

On August 8, 2016, defendants filed a motion to dismiss the complaint in its entirety. Dkt. 22. On September 12, 2016, plaintiff filed an opposition. Dkt. 26. On October 7, 2016, defendant filed a reply. Dkt. 27. Both parties have also filed declarations and exhibits after the reply was filed. See, e.g., Andrues Decl., Dkt. 28; Manninen Suppl. Decl., Dkt. 32. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

Plaintiff alleges that Rihko and Poujardieu are top executives at Raisio. In November 2008, Raisio, a Finnish food corporation, hired Mika Manninen and Helena Lumme as consultants as "branding experts" to create a plan to expand Raisio's international sales reach. Compl. ¶ 1. Ultimately, as part of that plan, Raisio, Manninen,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 2:16-CV-01046-CAS (Ex) | Date | November 7, 2016 |
|---|---|---|---|
| Title | OAT SOLUTIONS, LLC V. MATTI RIHKO ET AL. | | |

and Lumme created "a new natural food brand called 'Simpli'." Id. On February 15, 2010 Manninen and Lumme formed plaintiff, Oat Solutions, as a limited liability company organized under the laws of Delaware. Manninen Decl. ¶ 18, Dkt. 26–3. Plaintiff planned to launch the Simpli brand in the United States. Plaintiff's flagship product was the "Simpli OatShake," an oat-based non-dairy drink. Compl. ¶ 2.

On June 16, 2016, Oat Solutions, LLC, entered into three contracts with Raisio Nutrition Ltd[1], namely, a Funding Agreement[2], License Agreement, and Supply Agreement, Lindfors Decl. Ex. 1-3, Dkt. 22–1(collectively "Operative Contracts"), which provided plaintiff with startup capital, permission to use the Simpli brand name in specified geographic territories, and a guaranteed supply of oat-based non-dairy products, respectively, Compl. ¶ 30–33. Each agreement contained a virtually identical choice of law provision stating: "This agreement shall be governed and interpreted in accordance with the laws of Finland excluding its choice of law principles." Funding Agreement at 12; Supply Agreement at 10 (same); License Agreement at 15 (replacing the words "and interpreted in accordance with" with the word "by"). Each agreement also contained an identical mandatory arbitration provision ("Arbitration Provision") stating:

> Any disputes arising out of or relating to this Agreement (including the validity of this dispute resolution clause), if the disputes cannot be settled through amicable negotiations, shall be finally settled by arbitration under the rules and regulations of the Chamber of Commerce of Turku. The

---

[1] Raisio Nutrition Ltd appears to be a subsidiary of defendant Raisio PLC. Raisio Nutrition Ltd is not a party in this action. The complaint does not distinguish between Raisio Nutrition Ltd and Raisio plc even though it almost always appears to refer to Raisio Nutrition Ltd. The Court will refer to Raisio generally unless it has been provided documents that clarify which Raisio plaintiff is referring to.

[2] Mika Manninen and Helena Lumme were also parties to the Funding Agreement. Funding Agreement at 2.

Case 2:16-cv-01046-CAS-E   Document 34   Filed 11/07/16   Page 3 of 19   Page ID #:526

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:16-CV-01046-CAS (Ex) | Date | November 7, 2016 |
| Title | OAT SOLUTIONS, LLC V. MATTI RIHKO ET AL. | | |

arbitration shall be held in the Finnish language and shall take place in Turku, Finland where the award shall be given.

Funding Agreement at 12; License Agreement at 15; Supply Agreement at 10. The Supply Agreement required plaintiff to purchase all the products it needed exclusively from Raisio Nutrition Ltd and obligated Raisio Nutrition Ltd to sell the products according to the terms and procedures detailed in the Supply Agreement. Supply Agreement at 3. The Supply Agreement had an initial term of five years which plaintiff could extend another five years, but the entire agreement would terminate if the License or Funding Agreements were no longer valid. Id. at 7. In the event of material breach, the non-breaching party could terminate the Supply Agreement if it gave the breaching party written notice of its breach and the breach was not cured within 30 days thereafter. Id. at 8. On October 10, 2010, pursuant to the Funding Agreement, plaintiff and its members signed a Pledge Agreement borrowing up to $2,000,000 from Raisio Nutrition Ltd. Poujardieu Suppl. Decl. Ex. 11 at 1 ("Pledge Agreement").

Initially, the Simpli brand performed well in the United States. It launched in March 2011, at the "Natural Products Expo West" in Anaheim, California, compl. ¶ 41, and the following month Gelsons agreed to buy and stock its products in its Southern California stores, id. ¶ 43. In December 2011, Simpli OatShake won the "BevNET Award" for Best New Smoothie, a prestigious award in the beverage industry, id. ¶ 45, and the Prime Minister of Finland posted a congratulatory internet message to Rihko for winning the award, id. ¶ 46. By Spring 2012, Simpli products were being sold in 1200 stores in 37 states across the country. Id. ¶ 51.

However, on or about September 18, 2012, defendant Poujardieu called Manninen and informed him that Raisio planned to shut down Oat Solutions. Id. ¶ 55. The following day Lumme emailed Rihko and Poujardieu telling them that "[e]ven though our operations may look like a failure to you," pursuant to the Funding Agreement, Raisio Ltd could not unilaterally shut down the company unless they exercised their right to foreclose or purchase the company, which could not happen until 2014. Poujardieu

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O'     JS-6 |
|---|---|---|---|
| Case No. | 2:16-CV-01046-CAS (Ex) | Date | November 7, 2016 |
| Title | OAT SOLUTIONS, LLC V. MATTI RIHKO ET AL. | | |

Suppl. Decl. Ex. 13 at 1. Defendant Poujardieu responded saying "Raisio will fully play by the contract" and "we will succeed together or fail together." Id. Plaintiff alleges that despite Poujardieu's affirmations, Raisio actually intended to sell the plant in Turku where it manufactured plaintiff's products. Compl. ¶ 59. On October 2, 2012, Lumme and Manninen met with Rihko and Poujardieu in Charleston, South Carolina to discuss the situation. Id. ¶ 60. Rihko and Poujardieu did not say that Raisio intended to divest its non-dairy business including the Turku plant where plaintiff's products were made, but they did say that Raisio was unwilling to provide more funding. Id. ¶ 62. The parties agreed that plaintiff would seek a third party investor for additional capital. Id. ¶ 61

Lumme and Manninen spent the next few weeks trying to attract investors, id. ¶ 63, but on or about October 23, 2012, Poujardieu called Manninen and told him that Raisio was considering closing down the Turku plant near the end of 2012, and that going forward the price of goods would more than double, id. ¶ 64. Plaintiffs allege that had they been informed of the possibility of the plant shutting down earlier, they would have sought a new supplier as well as new investors. Id. ¶ 66. On October 26, 2012, Lumme and Manninen signed a Certificate of Cancellation for Oat Solutions with a checked box indicating the members had voted for dissolution, which was filed on November 5, 2012, with the California Secretary of State. Andrues Decl. Ex. 18, Dkt. 28–1. On November 18, 2012, Manninen emailed defendant Poujardieu and told him that investors were withdrawing from discussions and plaintiff had to decline new distribution agreements because of the uncertainty over its future supply of product. Id. ¶ 66. On November 20, 2012, defendant Poujardieu responded, writing that Raisio was still working on the option to close the plant but that no decision had been made. Id. ¶ 67. In another email on November 26, 2012 defendant Poujardieu wrote that a final decision had still not been made, but Raisio would still supply the products regardless of whether Raisio closes the plant or not, but in either case the price would more than double. Id. ¶ 68.

On December 18, 2012, Raisio Nutrition Ltd faxed and couriered plaintiff a notice of termination stating that pursuant to the material breach section of the Supply Agreement and a fax and email sent on November 15, 2012 reminding plaintiff of unpaid

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:16-CV-01046-CAS (Ex) | Date | November 7, 2016 |
| Title | OAT SOLUTIONS, LLC V. MATTI RIHKO ET AL. | | |

invoices, Raisio Nutrition Ltd. was immediately terminating the Operative Contracts, which also meant they would stop supplying plaintiff with product. Poujardieu Suppl. Decl. Ex. 10. Raisio Nutrition Ltd. then initiated an arbitration pursuant to the Arbitration Provision on or around January 17, 2013, seeking a declaration that Raisio's termination of the Operative Contracts was proper. Compl. ¶ 75. In January, 2013 plaintiff "pleaded with Raisio to continue supplying Simpli products so it could fulfill its North American distribution orders" but Raisio refused to do so. Id. ¶ 78. On March 5, 2013 Manninen and Lumme learned from the newspaper that the Turku plant had been sold to the Kavli Group, a Norwegian company that sells cheese, mayonnaise, and crackers in more than 30 countries. Id. ¶ 79.

Beginning in May, 2013, Manninen and Lumme began analyzing the IP addresses of past visitors to plaintiff's website and allege that its website was visited by many of Europe's largest food companies which had no relationship or contact with plaintiff. Id. ¶¶ 82–83. Plaintiff does not disclose how it determined that an IP address belonged to a particular company, but it does allege specific visits by a representative of specific companies with the first such visit on August 1, 2012 from the Kavli Group, through mid-November 2012. Id. ¶¶ 85–90. Plaintiff also created a marketing video for investors willing to sign a non-disclosure agreement because of its proprietary information which they distributed through a "unpublished URL address." Id. ¶ 91. Raisio was told it was confidential and sent the link on or around December 10, 2012. Id. ¶ 92. Members of major European food companies who had not signed the non-disclosure agreement and had no contact or relationship with the plaintiff viewed the video between December 2012 and January 18, 2013, including a representative of the Kavli Group. Id. ¶ 94–97. Plaintiff's conclusion from both of these incidents is that as part of trying to sell its non-dairy business, Raisio encouraged and enabled potential buyers to visit plaintiff's website and confidential marketing video in order to make the factory appear more valuable. Id. ¶¶ 84, 92. The crux of plaintiff's fraud claims is that Raisio executives, including but not limited to defendants Poujardieu and Rihko, were offered a share incentives to raise the stock price by a certain date not specified in the complaint. Id. ¶ 37. Defendants are accused of doing so by helping to create and extensively fund an American startup, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'    JS-6 |
|---|---|---|---|
| Case No. | 2:16-CV-01046-CAS (Ex) | Date | November 7, 2016 |
| Title | OAT SOLUTIONS, LLC V. MATTI RIHKO ET AL. | | |

then use that demand to make its underperforming facility more attractive to potential buyers. Id. ¶ 8. Plaintiff alleges that Raisio planned to sell its unspecified non-dairy assets including the facility used to produce oats for its American startup, Oat Solutions. Id. Plaintiff argues that it is suing in tort. Opp'n at 22. It appears that the gravamen of plaintiff's claims arise from fraudulent conduct leading a "pump and dump" scheme that culminated in the termination of the Supply Agreement. Id.

The parties commenced the arbitration in Finland on July 17, 2013, and the award and written opinion were issued on November 5, 2014, dismissing plaintiff's counterclaims and finding that Raisio Nutrition Ltd was entitled to terminate the Operative Contracts because of plaintiff's failure to pay its invoices, and plaintiff therefore owed Raisio Nutrition Ltd for the unpaid invoices as well as outstanding amounts from the loans pursuant to the Funding Agreement. Lindfors Decl. Ex. 4 at 19–20 ("Arbitration Award"). Plaintiff then filed an action to set it aside in the Finnish district court on procedural grounds which the district court dismissed, plaintiff's appeal of that decision is pending. Lindfors Decl. ¶ 8. In the arbitration, sixteen witnesses testified, eight Finnish residents, six American residents (including Manninen and Lumme who traveled to Finland), as well as two witnesses from Europe but outside Finland. Lindfors Decl. ¶ 13.

Defendants bring this motion to dismiss based on the Arbitration Provision, *forum non conveniens*, lack of personal jurisdiction, failure to state a claim, the statute of limitations, and failure to plead fraud with particularity. Because the Court finds that defendant's *forum non conveniens* argument is meritorious, it does not reach the other arguments.

### III.    LEGAL STANDARDS

Generally, "[i]n dismissing an action on forum non conveniens grounds the court must examine: (1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal." Lueck v. Sundstrand Corp., 236 F.3d 1137, 1142 (9th Cir. 2001). The *forum non conveniens* determination is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:16-CV-01046-CAS (Ex) | Date | November 7, 2016 |
| Title | OAT SOLUTIONS, LLC V. MATTI RIHKO ET AL. | | |

committed to the sound discretion of the trial court." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981). It is "an exceptional tool to be employed sparingly," and not a "doctrine that compels plaintiffs to choose the optimal forum for their claim." Dole Food Co. v. Watts, 303 F.3d 1104, 1118 (9th Cir. 2002) (quoting Ravelo Monegro v. Rosa, 211 F.3d 509, 514 (9th Cir. 2000). "[T]he standard to be applied is whether . . . defendants have made a clear showing of facts which . . . establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent . . . ." Cheng v. Boeing Co., 708 F.2d 1406, 1410 (9th Cir.1983). Ordinarily "[t]he plaintiff's choice of forum will not be disturbed unless the 'private interest' and 'public interest' factors strongly favor trial in the foreign country." Lueck v. Sundstrand Corp., 236 F.3d 1137, 1142–43 (9th Cir. 2001).

"Such caution [against *forum non conveniens* dismissals] is not warranted, however, when the plaintiff has violated a contractual obligation by filing suit in a forum other than the one specified in a valid forum-selection clause. In such a case, dismissal would work no injustice on the plaintiff." Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 134 S. Ct. 568, 583 n.8 (2013). This is because the Supreme Court has now explained that transfer requests pursuant to mandatory forum-selection clauses and enforced through 28 U.S.C. § 1404(a) are doctrinally identical to a forum selection clause that points to a foreign or state forum and is appropriately enforced through doctrine of *forum non conveniens*. Id. "An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause," Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 (1974), and "all doubts are to be resolved in favor of arbitrability" such that the even if the factual allegations only "touch" matters covered by the arbitration provision then arbitration is required, Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 721 (9th Cir. 1999).

A valid agreement to arbitrate before a specified foreign tribunal therefore changes calculus of the traditional *forum non conveniens* analysis in three ways. Atl. Marine 134 S. Ct. at 581. "First, the plaintiff's choice of forum merits no weight." Id. "Second, a court evaluating a defendant's [*motion for forum non conveniens*] based on a forum-selection clause should not consider arguments about the parties' private interests. Id. at 582. "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, [a dismissal for *forum non conveniens*] will

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'    JS-6 |
|---|---|---|---|
| Case No. | 2:16-CV-01046-CAS (Ex) | Date | November 7, 2016 |
| Title | OAT SOLUTIONS, LLC V. MATTI RIHKO ET AL. | | |

not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." Id. Finally, "the party acting in violation of the forum-selection clause . . . must bear the burden of showing that public-interest factors overwhelmingly disfavor a [dismissal for *forum non conveniens*]." Id. at 583.

A dismissal based on *forum non conveniens* is not a judgment on the merits, "it is a determination that the merits should be adjudicated elsewhere." Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 432 (2007). "A district court therefore may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." Id.

## IV.    DISCUSSION

The Court will discuss each set of factors below in order to evaluate whether a dismissal for *forum non conveniens* is appropriate.

### A.    Adequacy of the Alternative Forum[3]

An alternative forum is deemed adequate if: (1) defendants are amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy. Carijano v. Occidental Petroleum Corp., 643 F.3d 1216, 1225 (9th Cir. 2011) (citing Piper, 454 U.S. at 254 n. 22). Neither party appears to dispute that defendants are amenable to process in Finland for this dispute. However, they dispute whether Finland offers a satisfactory remedy. A satisfactory remedy does not mean an equivalent remedy, an alternative forum will be found satisfactory unless "it offers no practical remedy for the plaintiff's complained of wrong." Lueck, 236 F.3d at 1144. "This test is easy to pass." Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1178 (9th Cir. 2006).

---

[3] It is unclear whether, in light of Atlantic Marine, 134 S. Ct. 568, the adequacy of the alternative forum should still be analyzed if there is an arbitration provision which selects a foreign tribunal. Accordingly, the Court will address these issues.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 2:16-CV-01046-CAS (Ex) | Date | November 7, 2016 |
|---|---|---|---|
| Title | OAT SOLUTIONS, LLC V. MATTI RIHKO ET AL. | | |

Defendants argue that Finland provides a satisfactory remedy because plaintiff could pursue civil claim for fraud under section 30 of Finland's Contracts Act, 13.6.1929/228 Contracts Act, or chapter 2 section 1 of Finland's Tort Liability Act, 412/1974 Tort Liability Act. Mot. at 12. Defendants also provide an expert declaration from Mikko Tulokas, a former Justice of the Supreme Court of Finland. Tulokas Decl. ¶ 3, Dkt. 22–2. His declaration states that that plaintiff could bring its claims under those acts, id. ¶¶ 19–22, 35, in either a Finnish district court, id. ¶ 33, or in arbitration pursuant to the Arbitration Provision, id. ¶ 30. He also states that many of the same agreements, circumstances and allegations raised by the Complaint were raised by plaintiff in its counterclaim in the arbitration, id. ¶ 37, and that an ordinary court has no jurisdiction to examine and decide a claim when the parties have agreed to arbitrate a claim, id. ¶ 11. He has also provided a supplemental declaration highlighting some of the issues raised, in particular that plaintiff could pursue the claims under civil law regardless of any criminal issues. Tulokas Suppl. Decl. ¶¶ 16–18, Dkt. 27–1.

To rebut the evidence offered by defendants, plaintiff offers two declarations.[4] The first is from Sakari Melander, an expert in Finnish criminal law, Melander Decl. ¶ 1, Dkt 26–2. Melander states in his declaration that the events in the Complaint giving rise to fraud occurred in the Central District of California, Melander Decl. ¶ 19, according to his knowledge the events described in the Complaint did not take place in Finland, id. ¶ 20, and that criminal prosecution for crimes committed abroad is rare, id. ¶¶ 22–26. According to Melander, it is "not at all plausible" that a criminal prosecution would occur in this situation. Id. ¶¶ 24, 26. However, Melander appears to rely upon the portions of the Complaint regarding venue and jurisdiction. Id. ¶ 19 (citing Compl. ¶¶ 25–25). The Complaint does not allege where most of the relevant actions by defendants took place, e.g., Compl. ¶¶ 10–15, 55–59, 64–69, nor does Melander appear to have an independent basis for asserting where the relevant events occurred.

---

[4] Plaintiff for the first time at the hearing on this motion asked for jurisdictional discovery so it could depose defendant's expert. Because the Court has concluded that plaintiff can raise its claim under Finnish law it need not reach this request.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 2:16-CV-01046-CAS (Ex) | Date | November 7, 2016 |
| Title | OAT SOLUTIONS, LLC V. MATTI RIHKO ET AL. | | |

Most importantly however, Melander's declaration misses the issue, which is whether Finland provides a satisfactory remedy. Even if Finnish law provides no remedy for a fraud action on these facts, that has no bearing on whether Finnish law provides plaintiff with some remedy not labeled "civil fraud." Melander Decl. ¶ 14. The Court therefore finds the Melander Declaration, while providing a detailed summary of Finland's criminal procedures relating to fraud, adds only minimal value to the question of whether Finland provides a satisfactory remedy for the claims in this case.

Plaintiff's second declaration on Finnish law comes from Katri Havu, an expert in Finnish and European private and civil law, Havu Decl. ¶ 1, Dkt. 26–1. As defendants point out however, Havu is an attorney for the firm that represented plaintiff during the arbitration and its appeal of that award. Reply at 3 n.1. Havu's declaration states that section 30 of the Contracts Act "may not be used to obtain a confirmation that fraud the crime has taken place," Havu Decl. ¶ 17, and that plaintiff could not present criminal claims under the Tort Act, id. ¶ 22. However, like the Melander declaration, Havu's declaration focuses on the label of fraud and not the substance of plaintiff's claim. Havu's declaration states that Finnish law takes a restrictive attitude towards compensation for pure economic losses outside of contractual relationships, but provides no opinion on whether the facts here would provide a "particularly weighty reason" to do so under the Tort Liability Act. Id. ¶ 21.

In light of the foregoing, it does not appear that Finnish law precludes a satisfactory remedy for the claims in this case.

Furthermore, plaintiff has already agreed that Finland provides an adequate forum for claims "arising out of or relating to" the Supply Agreement. Plaintiff, by executing the Supply Agreement, agreed to arbitrate disputes in Turku Finland, in Finnish, under the rules of the Chamber of Commerce of Turku. Supply Agreement at 10. If the Court grants the *forum non conveniens* motion, then the determination of whether these claims are arbitrable will be a question of Finnish law. Additionally, if the arbitration provision is enforceable it will affect the *forum non conveniens* analysis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:16-CV-01046-CAS (Ex) | Date | November 7, 2016 |
| Title | OAT SOLUTIONS, LLC V. MATTI RIHKO ET AL. | | |

The Ninth Circuit has interpreted the phrase "related to" broadly. See Tracer Research Corp. v. Nat'l Envtl. Servs. Co., 42 F.3d 1292, 1295 (9th Cir. 1994) (interpreting 'arising from' as narrower than 'related to' and noting the broader interpretation given by the Second Circuit to 'related to' in Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 848 (2d Cir. 1987) (holding that RICO claims were "related to" the sales agreement)).

By agreeing to the arbitration provision particularly in the Supply Agreement, plaintiff consented and promised to bring disputes related to the Supply Agreement before that tribunal, a "solemn promise" they now ask to the Court to repudiate. See Scherk, 417 U.S. at 519. Whether or not plaintiff thinks the original arbitration was "bogus," Opp'n at 1, that does not address whether this case is "related to" the Supply Agreement. As is explained below in relation to the choice of law provision, there is no way to adjudicate plaintiff's claims that would not require interpreting the Supply Agreement. The Supply Agreement appears to have governed pricing, notice, exclusivity, and, most importantly, the topic of the previous arbitration - breach. Plaintiff cannot now ask the Court for permission to break its "solemn promise" to arbitrate claims arising from or related to the Supply Agreement. Scherk, 417 U.S. at 519; see In re Orange, S.A., 818 F.3d 956, 962–63 (9th Cir. 2016) (denying mandamus sought to compel arbitration where the case would not require interpreting any claims, facts, or documents the parties agreed to arbitrate). In light of the foregoing, the Court finds that Finland provides an adequate forum for plaintiff's claims. Neither party disputes that defendants are amenable to service, and Finnish law provides a satisfactory remedy should plaintiff bring its claims in court. In addition, plaintiff has effectively conceded this point by agreeing to an enforceable arbitration provision which requires that claims like those in the complaint be brought in arbitration in Finland.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:16-CV-01046-CAS (Ex) | Date | November 7, 2016 |
| Title | OAT SOLUTIONS, LLC V. MATTI RIHKO ET AL. | | |

### B. Public Interest Factors

The public interest factors include: (1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum. Carijano, 643 F.3d. at 1232.

### 1. Local Interest in the Lawsuit

There is a "difference of opinion" in the Ninth Circuit over whether this factor involves evaluating just the chosen forum's interest, or whether it is appropriate to compare state interests. Id. at 1233 n.3. The Court will therefore discuss all of the facts and then analyze both California's interest alone, and California's interest compared to Finland's.

Plaintiff argues that California has an interest in "vindicating the rights of a California business defrauded by a foreign entity that enjoyed the economic benefits of sending its manufactured goods into this state for sale." Opp'n at 21. Defendants disagree and argue that plaintiff's principal place of business and the citizenship of its members is Florida. Reply 9–10.

It is undisputed that Defendant Rihko is a citizen and resident of Finland, Rihko Decl. ¶ 2, Dkt. 22–4, defendant Poujardieu is a French citizen and resident of Belgium, Poujardieu Decl. ¶ 2, Dkt. 22–3, defendant Raisio plc is a Finnish company whose principal place of business is Raisio, Finland and traded on a Finnish stock exchange, compl. ¶¶ 18–20, and plaintiff is an LLC organized under the laws of the State of Delaware. Id. ¶ 17. The parties however dispute whether plaintiff's principal place of business was Florida or California, whether Manninen and Lumme were Florida or California residents, and whether they are citizens of the United States, Finland, or both.

Manninen has provided a declaration stating that he and his wife, Helena Lumme, were both sworn in as U.S. citizens in 2006. Manninen Decl. ¶¶ 1–2. Defendant has provided a declaration stating upon information and belief that they are Finnish citizens.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'    JS-6

| Case No. | 2:16-CV-01046-CAS (Ex) | Date | November 7, 2016 |
|---|---|---|---|
| Title | OAT SOLUTIONS, LLC V. MATTI RIHKO ET AL. | | |

See Lindfors Decl. ¶ 10. The Court accepts that they were both naturalized in 2006. Whether or not they also maintain Finnish citizenship is immaterial to California's interests in protecting its citizens.

However, although Manninen and Lumme are naturalized citizens of the United States, it is not clear that they are California citizens. Manninen has provided a declaration which states that he and Lumme moved to Los Angeles in 1995, Manninen Decl. ¶ 2, and suggests that they lived in Santa Monica in 2010. Manninen Decl. ¶ 20 (stating they lived in Santa Monica, but not stating when). Defendants disagree with the implication that Manninen and Lumme were California residents during the relevant periods and argue they were both residents of Florida. In support, point to the Funding Agreement, signed by Manninen and Lumme individually, where they both used the Florida address.[5] Funding Agreement at 2. In plaintiff's registration with the California Secretary of State, it lists Manninen as the CEO, and Lumme and Manninen as the only members of the LLC, with the same Florida address for both of them, it only lists a California address for the an agent for service of process. Andrues Decl. Ex. 16. In the email correspondence between Lumme and Poujardieu Lumme's signature line of the email is provided, with the Florida address. Poujardieu Supp. Decl., Ex. 13. Most importantly however, in the Pledge Agreement which they both signed individually, the address they provided for notice was the same Florida address, Pledge Agreement at 12, and the Pledge Agreement states "The Pledgors [Manninen and Lumme] reside at their [Florida address]. The Pledgors also maintain a residence in Los Angeles County, California. The Pledgors believe that their principal residence is in Florida," id. at 3. Finally, in the Pledge Agreement Manninen and Lumme state they only have Florida drivers' licenses. Id. at 4. As defendants point out, Manninen and Lumme do not state they were California residents, paid California taxes, or registered to vote in California. Reply at 10. Manninen states in his declaration that they obtained the Florida address so that when plaintiff expanded to the East Coast they would have an office more accessible

---

[5] All references to a Florida address are to the same Florida address used by plaintiff, Manninen, and Lumme.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'    JS-6

| Case No. | 2:16-CV-01046-CAS (Ex) | Date | November 7, 2016 |
|---|---|---|---|
| Title | OAT SOLUTIONS, LLC V. MATTI RIHKO ET AL. | | |

to Raisio's European employees. Manninen Decl. ¶ 25. This, however, is belied by the fact that they established the Florida address even before they registered the LLC to do business in California, the fact that he and his wife have Florida drivers licenses, and stated that they reside at the Florida address.

In light of the foregoing, it appears that Manninen and Lumme are domiciled in Florida. Although they may have lived in Santa Monica or another part of California at some point during the period at issue in this action, California does not appear to have a unique interest in protecting Manninen and Lumme from the fraud alleged here.

The parties also dispute the location of Oat Solutions LLC's principal place of business.[6] Manninen states in his declaration that plaintiff's principal place of business was Santa Monica, California. Manninen Decl. ¶ 20. Plaintiffs support this with an electric bill for an apartment in Santa Monica from June 2011, Pl.'s Ex. G, Dkt. 26–4, which Manninen states was for the rented office space where he and his wife worked. Plaintiff also provides a copy of the 2011 certificate of title for a car in plaintiff's name, although the address listed there is a different address than the rented office space. Pl.'s Ex. H, Dkt. 26–4. In his declaration he also states that from 2011–2012 "Oat Solutions employed approximately 4-11 employees at any given time, all of which were California residents," Manninen Decl. ¶ 22, and that Oat Solutions maintained a warehouse nearby in Hawthorne.

Defendants disagree and argue that plaintiff's principal place of business was Florida. Mot. at 9; Reply at 10. The Court has already found that both members of the LLC were Florida residents. All of the Operative Contracts required that notice to

---

[6] As an LLC, plaintiff is a citizen of every state where its owners or members are citizens. Johnson v. Columbia Properties Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006). The local interest factor of a *forum non conveniens* analysis however appears to be at least a little more flexible. See Gulf Oil, 330 U.S. at 508–09 (stating that local interest is in having *localized controversies* decided at home) (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**   'O'   JS-6

| Case No. | 2:16-CV-01046-CAS (Ex) | Date | November 7, 2016 |
|---|---|---|---|
| Title | OAT SOLUTIONS, LLC V. MATTI RIHKO ET AL. | | |

plaintiff be sent to the Florida address. Funding Agreement at 10; Supply Agreement at 9; License Agreement at 13. The License Agreement also included a provision permitting plaintiff to change the address where payment or notice was to be sent, but there is no evidence to suggest that plaintiff ever did so. License Agreement at 13. That same Florida address was provided for the entity address on the California Secretary of State's website for Oat Solutions, LLC. Defs.' Ex. 7. Plaintiff also listed a Florida address on two press releases. Lindfors Decl. Ex. 5–6. In addition, in the Finnish arbitration, Finnish district court and Finnish appellate court plaintiff used the Florida address. Lindfors Decl. ¶ 17–18. Plaintiff listed the Florida address for its trademark applications. Keaton Decl. Ex. 14, Dkt. 27–4. The notice of termination which informed plaintiff that defendants were ending their relationship was sent to the Florida address. Poujardieu Suppl. Decl. Ex. 10. Finally, License Agreement, which plaintiff was a party to, identifies plaintiff as "Oat Solutions LLC, a Delaware limited liability company, having its principal place of business at [the Florida address]." License Agreement at 4.

Plaintiff has consistently used the Florida address in virtually every document placed in before the Court, and the two documents that contain Santa Monica addresses, the car title and the electricity bill, contain different addresses in Santa Monica. Plaintiff's sole explanation is that it obtained an office for a planned expansion, Manninen Decl. ¶ 25, but it was using the Florida address from when it registered to do business in California to its current appeal of the Arbitration Award in Finnish courts. Accordingly, it appears that plaintiff's principal business was Florida.

The final factor relevant to the local interest in this action is where the tortious conduct took place.[7] The only time the complaint alleges the location of any of the four

---

[7] Defendants also argue that because plaintiff's registration was cancelled in October, 2012 it lacked the capacity to bring this action. Plaintiff appears to have since re-registered to do in California. Pl.'s Ex. R, Dkt. 32–1. The Court does not address their capacity because it resolves the motion on other grounds. The Court also does not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | **'O'** | **JS-6** |
|---|---|---|---|---|
| Case No. | 2:16-CV-01046-CAS (Ex) | Date | November 7, 2016 | |
| Title | OAT SOLUTIONS, LLC V. MATTI RIHKO ET AL. | | | |

principal individuals in relation to any act of concealment or false representation is when the parties met in Charleston, South Carolina. Compl. ¶ 62. For every other fraudulent act alleged in the complaint no location is provided and the Court has no other basis to determine where they occurred.

Plaintiff has not shown that any act of fraud occurred in California or was committed against a California citizen, resident, or entity with its principal place of business in California. In contrast, defendant Rihko is a Finnish citizen and resident, and the dispute centers around allegedly fraudulent behavior involving the sale of property in Finland to artificially boost the profits of Raisio, a corporation headquartered in Finland and publicly traded on a Finnish stock exchange.

Whether the Court just looks at California's interests, or compares California's interests to Finland's, the result is the same. The Court finds that this factor weighs decidedly in favor of dismissal on *forum non conveniens* grounds.

 2. **The Court's familiarity with the Governing Law**

Neither party has conducted a full blown choice of law analysis addressing state interests and relative impairment. See Carijano, 643 F.3d at 1234. Plaintiff argues that Finnish and Californian law are materially different, Opp'n at 7–8, but assumes that California law would apply, Opp'n at 21. Defendants argue that resolving this case will involve complex matters of Finnish law because the Operative Contracts contain choice of law provisions requiring the application of Finnish law, and because resolving plaintiff's claims will involve questions under Finnish law of whether these issues were raised or fully adjudicated in the previous arbitration. Mot. at 14. Plaintiff argues the Finnish arbitral panel "was not empowered to, and did not consider, Oat Solutions' claims for fraud." Opp'n at 2. Plaintiff appears to have made the similar fraud

need to address whether a cancelled registration means there is less local interest in the controversy, because the Court has more than sufficient evidence to evaluate that factor.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:16-CV-01046-CAS (Ex) | Date | November 7, 2016 |
| Title | OAT SOLUTIONS, LLC V. MATTI RIHKO ET AL. | | |

arguments in the arbitration. Arbitration Award at 12, 18–19. Nonetheless, the panel found plaintiff's arguments to be irrelevant and that "Raisio has not been shown to have acted fraudulently." Arbitration Award at 12, 18–19.

Defendants also argue that the Operative Contracts have choice of law provisions which require each agreement to be governed and interpreted according to the laws of Finland. Reply at 5–6. A federal court sitting in diversity applies the forum state's choice of law rules, Fields v. Legacy Health Sys., 413 F.3d 943, 950 (9th Cir. 2005) (quotation marks omitted). California's choice of law rules require that where sophisticated parties agree that a forum's laws will govern an agreement, the forum's laws will also govern tort claims related to that agreement, Nedlloyd Lines B.V. v. Superior Court, 3 Cal. 4th 459, 470 (1992). The parties here are sophisticated and experienced business people, Compl. ¶ 1, and while plaintiff's claim may sound in tort, Opp'n at 22–23, it is clear that it relates to the Supply Agreement.

The gravamen of plaintiff's claims are that defendants concealed and misrepresented their intent to breach the Supply Agreement and sell the Turku plant at a higher value, demonstrated by plaintiff's orders. However, in the Supply Agreement plaintiff agreed to purchase its product exclusively through Raisio, Supply Agreement at 3, and the Arbitration Award states that plaintiff's failure to pay its invoices was the grounds for breach, Arbitration Award at 18–19. It is thus clear that plaintiff's claims "relate" to the Supply Agreement because plaintiff's claims cannot possibly be evaluated without first interpreting the Supply Agreement, which provides that it must be interpreted according to Finnish law. Finland also clearly has a substantial relationship to the parties and transaction, and no fundamental public policy of California has been identified that would be violated by applying Finnish law to disputes arising from the Operative Contracts.

The Court is not required in this case to conduct a complete choice of law analysis in resolving *forum non conveniens*. See Lueck, 236 F.3d at 1148 (noting that district courts need not make a choice of law determination to decide a *forum non conveniens* motion that does not involve a statute requiring venue in the United States). The choice

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**   'O'   JS-6

| Case No. | 2:16-CV-01046-CAS (Ex) | Date | November 7, 2016 |
|---|---|---|---|
| Title | OAT SOLUTIONS, LLC V. MATTI RIHKO ET AL. | | |

of law issues the parties have raised however, strongly favor the application of Finnish law for the contract and tort issues, as well as Finnish procedural law relating to arbitrations and their preclusive effect, all of which are unfamiliar to this Court. This factor therefore weighs in favor of dismissal based on *forum non conveniens*.

### 3. Burden on Local Courts, Juries, Congestion, and Unrelated Costs

If the parties were to proceed with arbitration in Finland, that would follow the Federal Arbitration Act's, 9 U.S.C. § 1 *et seq.*, national policy in favor or arbitration, Preston v. Ferrer, 552 U.S. 346, 349 (2008). Arbitration would eliminate the need for a jury drawn from a California jury pool with little connection to the case. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508–09 (1947) ("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."). In addition, the Arbitration Provision required the arbitration to be conducted in Finnish, Supply Agreement at 10, and some important documents including the transcript of the arbitration and the Arbitration Award are in Finnish, e.g., Lindfors Supp. Decl. Exs. 9–10. This means this Court would have to be provided translations of key documents and translators for several potential witnesses, Mot. at 14, while Finnish courts often do not require documents in English to be translated into Finnish, Tulokas Decl. ¶ 33. In total these factors all either weigh in favor dismissal or are neutral.

Plaintiff bears the burden of showing it was justified in ignoring its promise to resolve disputes related to the Operative Contracts by arbitration in Finland. Plaintiff however has failed to demonstrate that a single public interest factor weighs in its favor.

### V. CONCLUSION

It appears that the public interest factors weigh in favor of dismissal and that Finland provides an adequate forum for resolution of plaintiff's claims. For the foregoing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:16-CV-01046-CAS (Ex) | Date | November 7, 2016 |
| Title | OAT SOLUTIONS, LLC V. MATTI RIHKO ET AL. | | |

reasons, defendants' motion to dismiss on *forum non conveniens* grounds is **GRANTED**.[8]

    IT IS SO ORDERED.

| | 00 : 14 |
|---|---|
| Initials of Preparer | CMJ |

---

[8] Because the Court resolves the case on *forum non conveniens* grounds it need not examine defendants' other grounds for dismissal.